1
2
3
4
5
6
7
8
9
10
11
12
13
14

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| SAINT AGNES MEDICAL CENTER, | ) | 1:09cv01943 AWI DLB |
| | ) | |
| | ) | |
| Plaintiff, | ) | ORDER GRANTING PLAINTIFF'S |
| | ) | MOTION TO REMAND ACTION |
| v. | ) | |
| | ) | (Document 9) |
| MICHAEL DOGALI, M.D., | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

15
16
17
18
19
20
21
22
23
24
25
26
27
28

        Plaintiff Saint Agnes Medical Center ("Plaintiff") filed the instant motion to remand this action to the Fresno County Superior Court on December 3, 2009.  The motion was heard on January 8, 2010, before the Honorable Dennis L. Beck, United States Magistrate Judge.  Steven McGee and Amanda Hebesha appeared on behalf of Plaintiff.  Judith Harless appeared on behalf of Defendant Michael Dogali, M.D. ("Defendant").

## **BACKGROUND**

        Plaintiff filed the instant breach of contract action against Defendant on September 21, 2009, in Fresno County Superior Court.  Defendant removed the action to this Court on November 4, 2009, pursuant to this Court's federal question jurisdiction.  Defendant filed an answer and counter-claim on November 12, 2009.

1

On December 3, 2009, Plaintiff filed a motion to remand the action along with an application for right to attach order and writ of attachment.[1]  Defendant opposed the motions on December 22, 2009, and Plaintiff filed its replies on December 31, 2009.

## **ALLEGATIONS IN THE COMPLAINT**

According to the complaint, in September 2006, Plaintiff and Defendant entered into a written Physician Recruitment Agreement ("PRA") pursuant to which Plaintiff agreed to provide Defendant with certain financial support to move to the Fresno area and establish and maintain a medical practice specializing in neurosurgery in the Fresno community.  The PRA provided that Plaintiff would provide two lines of credit- the Practice Expense Line of Credit ("PEL") and the Gross Receipts Line of Credit ("GRL").  Defendant executed promissory notes for each line of credit.

Under the PEL, Plaintiff provided Defendant with a $500,000 line of credit.  Defendant was entitled to receive advances from the line of credit for a period of two years beginning in October 2006.  In October 2008, the PEL was to be repaid by Defendant over a period of 24 months, with interest.  Between October 2006 and September 15, 2009, Defendant had fully withdrawn the PEL in the principal amount of $500,000.  Defendant has failed to make payments despite a June 30, 2009, demand letter, or comply with the other conditions of the PEL.  Plaintiff alleges it has been damaged in the principal sum of $500,000, together with interest in the amount of $89,293 as of September 15, 2009, for a total balance as of September 15, 2009, of $589,293.

Under the GRL, Plaintiff agreed to advance up to $650,000 to Defendant.  Plaintiff acknowledged and agreed that it was, and is, willing to cancel certain specified obligations of Defendant under the GRL.  However, any amounts advanced in excess of the $650,000 cap required immediate repayment upon demand.  To date, Plaintiff has advanced $272,644 over the $650,000 cap.  Defendant has failed to repay the amount despite a June 30, 2009, demand letter.  Plaintiff alleges it has been damaged in the principal sum of $272,644, together with $41,805 in interest, for a total balance of $312,449.

---

[1]  As the Court is remanding this action for lack of jurisdiction, it will not address Plaintiff's application for right to attach order and writ of attachment.

1    In October 2007, Plaintiff and Defendant entered into an Income Guarantee and

2    Repayable Loan Agreement ("Income Agreement").  In connection with the Income Agreement,

3    Defendant executed a promissory note in favor of Plaintiff in the amount of $650,000.  The note

4    was to be repaid monthly in 12 equal installments commencing October 1, 2008, until principal

5    and interest were repaid.  In October 2007, Plaintiff began making advances under the terms of

6    the Income Agreement.  On November 12, 2007, the parties amended the Income Agreement.

7    The parties entered into a second amendment on October 23, 2008.  Under the terms of the

8    second amendment, Defendant was to commence making payments on January 1, 2009.

9    Defendant breached the Income Agreement and October 2007 Note by failing to make any

10   payments despite a June 30, 2009, demand letter.  Plaintiff alleges that the principal sum of

11   $622,101 is now due an owing, with interest.

12       In addition to failing to repay the loans, Plaintiff alleges that Defendant breached the PRA

13   by failing to accurately report financial information and failing to provide Plaintiff with full and

14   complete access to financial information and records.

15       Based on these facts, Plaintiff alleges causes of action for breach of contract and

16   promissory notes, breach of Income Guarantee and Repayable Loan Agreement, and common

17   counts for money lent under each of the three loans (PEL, GRL and Income Agreement).

18       Defendant's counter-claim alleges that despite the terms of the PEL, based on

19   representations by Plaintiff, he expected that no repayment would be required.  Instead, he alleges

20   that Plaintiff said it would structure the arrangement with the academic institution that was to hire

21   Defendant so that the institution would repay any sums due on the note.  In addition to his full-

22   time practice, Defendant assumed a Medical Directorship with Plaintiff for which he was paid on

23   an hourly basis.  He also agreed to provide some coverage for Plaintiff's emergency department

24   for which he would be paid on an hourly basis.  Defendant further agreed to take a leadership role

25   in establishing Defendant's new neuroscience program.

26       Defendant alleges counterclaims for breach of agreement based on Plaintiff's alleged

27   failure to provide promised assistance to Defendant in developing the neuroscience program and

28   failure to hire additional doctors in the emergency department; breach of the implied covenant of

1  good faith and fair dealing; declaratory relief as to whether any amounts are due under the

2  agreements based on Defendant's allegation that the agreements violated the Stark Law, 42

3  U.S.C. § 1395nn; misrepresentation; reformation and intentional infliction of emotional distress.

4  **DISCUSSION**

5  A.    Legal Standard

6          By statute "any civil action brought in a State court of which the district courts of the

7  United States have original jurisdiction, may be removed by the defendant or the defendants, to

8  the district court of the United States for the district and division embracing the place where such

9  action is pending." 28 U.S.C. § 1441(a).  The party seeking to invoke federal jurisdiction bears

10 the burden of establishing jurisdiction.  See Indus. Tectonics, Inc. v. Aero Alloy, 912 F. 2d 1090,

11 1092 (9th Cir. 1990).

12         Whether a cause of action arises under the Constitution, treaties, or laws of the United

13 States must be determined solely from what is contained in the plaintiff's well-pleaded complaint.

14 Lighting Science Group Corp. v. Koninklijke Philips Electronics N.V., 624 F.Supp.2d 1174, 1178

15 (E.D. Cal. 2008) (citing Taylor v. Anderson, 234 U.S. 74, 75-76 (1914)).  Federal jurisdiction is

16 not proper when the federal question only arises through the defendant's defense or the plaintiff's

17 necessary response thereto.  Id. (citing Christianson v. Colt Indus. Operating Corp., 486 U.S.

18 800, 809 (1988)).  A case may not be removed based on a federal defense "even if the defense is

19 anticipated in the plaintiff's complaint, and even if both parties conceded that the federal defense

20 is the only question truly at issue." Caterpillar Inc. v. Williams, 482 U.S. 386, 393 (1987).

21         "Where doubt regarding the right to removal exists, a case should be remanded to state

22 court."   Matheson v. Progressive Specialty Ins. Co., 319 F.3d 1089, 1090 (9th Cir. 2003).

23 B.    Discussion

24         Plaintiff argues that this is a simple state law contract dispute and no basis for removal

25 exists on the face of the complaint.  Instead, a federal question is only raised in Defendant's notice

26 of removal and as an anticipated defense.  For the following reasons, the Court agrees.

27         Defendant contends that removal is proper because Plaintiff's right to relief necessarily

28 depends on a resolution of a substantial question of federal law.  Franchise Tax Bd. of State of

4

1    Cal. v. Construction Laborers Vacation Trust, 463 U.S. 1, 27-28 (1983) (federal question

2    jurisdiction exists only in "those cases in which a well-pleaded complaint establishes either that

3    federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on

4    resolution of a substantial question of federal law."); Rain v. Criterion Systems, Inc., 80 F.3d 339,

5    343 (9th Cir. 1996) (federal question jurisdiction exists where one or more of plaintiff's state law

6    claims necessarily turn on the construction of a substantial, disputed federal question).

7          Specifically, Defendant argues that all agreements at issue are subject to the Stark Law, 42

8    U.S.C. § 1395nn, a law aimed at preventing abuses of the Medicare system based on excessive

9    referrals for certain designated health benefits billable to Medicare. The Stark Law prohibits a

10   hospital from submitting Medicare claims for payment for certain services based on patient

11   referrals from physicians who have an improper "financial relationship" with the hospital. 42

12   U.S.C. § 1395nn(a)(1); U.S. ex rel. Frazier v. IASIS Healthcare Corp., 554 F.Supp.2d 966

13   (D.Ariz. 2008). "Financial relationship" includes a compensation agreement between the

14   physician and the entity, with some exceptions. A physician or entity that enters into such a

15   scheme violates the Stark Law and is subject to a civil money penalty of not more than $100,000

16   for each such arrangement or scheme. 42 U.S.C. § 1395nn(g)(4).

17         The Stark Law, however, to the extent it can be relied upon in the first instance, is

18   applicable to this action only as a defense. Plaintiff's complaint is pled as a state law contract

19   action with no reference to the Stark Law or any other federal issue. Plaintiff's right to relief is

20   based on California contract law and needs no reference to, or interpretation of, the Stark Law.

21         Defendant urges the Court to rely on Grable & Sons Metal Products, Inc. v. Darue

22   Engineering & Mfg., 545 U.S. 308 (2005), where a former landlord brought a quiet title action in

23   state court against the tax purchaser, alleging that the IRS gave him inadequate notice of the sale.

24   The Court determined that federal jurisdiction was warranted because whether Grable was given

25   adequate notice within the meaning of the federal tax statute was an essential element to his quiet

26   title claim. The Court also found that the meaning of the federal statute was actually in dispute,

27   and was the only factual or legal issue contested in the action. As the meaning of a federal tax

28   statute was an important issue of federal law that "sensibly belongs" in federal court and the

Government had a direct interest in the availability of a federal forum, federal jurisdiction was proper.  The Court concluded, "because it will be the rare state title case that raises a contested matter of federal law, federal jurisdiction to resolve a genuine disagreement over federal tax title provisions will portend only a microscopic effect on the federal-state division of labor."  Id. at 314.

The plaintiff's claim in Grable, however, raised the federal issue within his right to relief.  To demonstrate that his claim to title was superior, he argued that the notice given by the IRS was inadequate *under federal law.*  Id. at 314-315.  In other words, the Grable plaintiff could not have established the elements of his claim without reliance on federal law.

Here, however, the elements of Plaintiff's claim do not involve any aspect of federal law.  The Stark Law is only implicated by Defendant as a defense to the validity of the contract.  To hold otherwise would require plaintiffs in contract actions to negate the possibility of invalidity under all applicable, related statutes in their case in chief.

Moreover, case law does not support a finding that private parties to a private contract can invoke the Stark Law to invalidate the contract.  The purpose of the Stark Law is to protect the government from Medicare fraud and there is no indication that any private right can be extrapolated therefrom.  See eg. U.S. ex rel. Villafane v. Solinger, 543 F.Supp.2d 678 (W.D. Ky. 2008) ("[n]either the Anti-Kickback law nor the Stark law provides for a private right of enforcement. . . Nor does the qui tam statute, 31 U.S.C. 3730(b), which allows private persons to bring civil claims for violation of the [False Claims Act], authorize private persons to bring civil claims for violations of the Anti-Kickback and Stark laws outside the context of the FCA.").

Insofar as Defendant contends that his counterclaim for reformation invokes the Stark Law, his argument is without merit.  Even assuming that a private right to reform exists under the Stark Law, Defendant's claim for reformation is based on Plaintiff's alleged misrepresentations.  That an unreformed contract may violate the Stark Law, as Defendant contends, is at best a mere reference to the Stark Law in attempting to reform based on a misrepresentation and does not create a substantial federal issue.

1    The Court declines to issue sanctions against Defendant.  Although his arguments were

2    unpersuasive, they did not rise to the level of "objectively unreasonable."  <u>Martin v. Franklin</u>

3    <u>Capital Corp.</u>, 546 U.S. 132, 136 (2005).

4                                              <u>**ORDER**</u>

5    Plaintiff's Motion to Remand is GRANTED.  This action is REMANDED to the

6    Fresno County Superior Court for all further proceedings.

7

8    IT IS SO ORDERED.

9    **Dated:    January 15, 2010**                    _____/s/ **Dennis L. Beck**_____
                                                                    UNITED STATES MAGISTRATE JUDGE